JOURNAL ENTRY and OPINION
{¶ 1} Jose Castro appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of aggravated burglary, aggravated robbery, kidnaping, felonious assault, and gross sexual imposition, each count containing a firearm specification. On appeal, he argues that the evidence is insufficient as a matter of law, that the verdict is against the manifest weight of the evidence, and that the trial court erred in imposing maximum and consecutive sentences. The state did not timely file a brief in this case. Upon review of the record, we reject Castro's challenges to his conviction and sentence and affirm the judgment of the trial court.
 {¶ 2} The record reveals that, during the early morning hours of July 24, 2001, Castro and two other masked accomplices, approached Peggy Dean as she returned home from work, and forced her at gunpoint to let them into her residence at 9521 Kolar Avenue in Cleveland. Castro, who carried a handgun, ordered Dean to give her money, her Rolex watch, and her wedding rings. He then forced her into her bedroom, ordered her to kneel over her bed, put a pillow over her head, and demanded to know the location of other valuables and drugs. He then showed her pictures of her husband and asked if he was in the house and where his valuables were located.
 {¶ 3} Castro then struck Dean in the back of her head with his gun and began tearing her clothes from her body stating "I been wanting to fuck you ever since the first time that I seen you." Dean began screaming and Castro then asked his two accomplices if they wanted "some of this." He continued to attack her and ordered the others to begin taking items from Dean's house, including two televisions, a VCR, and a video game.
 {¶ 4} During the melee, John Wallace, a friend of Dean's husband, entered the house and said he was looking to get high. Castro then punched Dean, thinking Dean knew where the drugs and money were located, and forced Wallace and Dean to lie down on the kitchen floor as he continued to demand the location of any drugs or valuables.
 {¶ 5} Castro then forced them into the basement, closed the door and continued his search. After Castro and his accomplices left, Dean made two calls to police, and in each call she stated that she knew the identity of one of her assailants.
 {¶ 6} Police arrived on the scene and transported Dean to the hospital. She told police at the hospital that Castro was one of the three assailants. The next day she saw Castro sitting on his mother's front porch and called police, who arrived and arrested him.
 {¶ 7} As a result of this incident, the grand jury indicted Castro for aggravated burglary, aggravated robbery, kidnaping, felonious assault, and gross sexual imposition.
 {¶ 8} At trial, Dean testified that she has seen Castro about a week prior to the incident at a funeral for his cousin, and had talked with him for about 30 minutes following the funeral and observed he carried a gun in the waistband of his pants. She further testified that she saw Castro in the neighborhood on at least eight occasions prior to July 24, and had braided his hair.
 {¶ 9} On the night of the crime, Dean told the jury that Castro and the other men were wearing masks. She testified, however, that she could identify Castro because he was so close to her, she recognized his voice, his facial features, the braids in his hair, his complexion, his build and his height, and she recognized the gun he carried.
 {¶ 10} Castro offered the testimony of his mother as an alibi witness. She testified that her son was at home the night of the incident playing cards with his friends, cousins, and his girl friend. After deliberation, the jury returned verdicts of guilty on all charges.
 {¶ 11} Castro now appeals, raising four assignments of error. We will consider the first two together. They state:
 {¶ 12} "I. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING THAT CASTRO PERPETRATED THE ALLEGED CRIMES BEYOND A REASONABLE DOUBT BASED SOLELY ON THE UNCORROBORATED TESTIMONY OF A SINGLE WITNESS.
 {¶ 13} "II. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 14} Castro contends that the state presented insufficient evidence to support his conviction and that his conviction is against the manifest weight of the evidence. The state does not counter Castro's arguments as it did not file a brief. The issues then presented for review concern whether sufficient evidence supported Castro's guilt and whether the conviction is against the manifest weight of the evidence. We consider these two claims in turn. Castro bases both his sufficiency and weight arguments on the fact that Dean is the only witness to the crime.
 {¶ 15} As to the claim of insufficient evidence, Crim.R. 29(A) states, in relevant part:
 {¶ 16} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 17} The test for sufficiency raises a question of law to be decided by the court before the jury may receive and consider the claimed offense. In State v. Martin (1983), 20 Ohio App.3d 172, the court summarizes the standard of review for a sufficiency claim:
 {¶ 18} "* * * [T]he test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence." (Citations omitted.)
 {¶ 19} Here, the state produced the victim, who identified Castro as the perpetrator to police on the night of the crime and who also identified him in court as the individual who forced her into her house, assaulted her and removed items from her home.
 {¶ 20} The state, by way of circumstantial evidence, also presented testimony from Dean concerning the presence and use of the weapon. She described the weapon and testified that Castro threatened her and hit her over the head with it. Castro threatened to use the gun, by implicitly sticking it into Dean's side and ordering her into the house, onto the kitchen floor, and finally into the basement. In State v.Thompkins (1997), 78 Ohio St.3d 380, 385, the gun used during a robbery was never recovered. The Ohio Supreme Court nonetheless found sufficient evidence supported the firearm specification because proof of operability of a firearm can be established by circumstantial evidence, which can consist of the brandishing of the firearm by the defendant and the implicit threat to shoot it.
 {¶ 21} Given this evidence, and viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, we conclude any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Thus, Castro's conviction is sustained by sufficient evidence.
 {¶ 22} We next consider whether the jury's verdict is against the manifest weight of the evidence. In State v. Thompkins (1997), Ohio St.3d 380, the court cited Martin for its summary of the standard of review for a manifest-weight claim:
 {¶ 23} "* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." (Citations omitted.)
 {¶ 24} Furthermore, we are mindful that the weight of the evidence and the credibility of witnesses are primarily issues for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We also recognize that the trier of fact is entitled to believe or not to believe all, part, or none of the testimony of the witnesses who testify at trial. State v. Antill (1964), 176 Ohio St. 61.
 {¶ 25} Regarding his manifest-weight claim, Castro argues that the only identification testimony came from Dean and that the state did not produce any physical evidence concerning the gun, while he has produced the alibi evidence of his mother.
 {¶ 26} Here, the record indicates that Dean identified Castro as the assailant who perpetrated the crimes against her. Dean told police on the 911 tape that she knew one of the assailants. She further identified Castro to police while being treated at the hospital for her injuries. The evidence further revealed that Dean knew Castro, she had spent time with him prior to the crimes, she had braided his hair and talked with him in the neighborhood on several occasions. Further, the assailant knew who lived with Dean and what kind of valuables she had. He, in fact, stole pictures of Castro's family.
 {¶ 27} Dean also testified that she knew Castro had a splint on his right hand, and that the masked man favored his left hand. She further testified that she saw Castro's mother changing or cleaning the splint on the day she called police to have him arrested. Although Castro questions the credibility of the victim due to the fact the assailant wore a mask, we note that the jury viewed the testimony of the victim and defense counsel's cross-examination of her.
 {¶ 28} The record reflects that Castro countered this evidence produced by the state by producing an alibi, his mother, who testified that her son was at home the night of the incident playing cards with his friends and relatives.
 {¶ 29} After reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we are not persuaded that the jury clearly lost its way and created such a manifest miscarriage of justice such that Castro's conviction must be reversed and a new trial ordered.
 {¶ 30} Accordingly, we overrule this assignment of error. Castro's third assignment of error states:
 {¶ 31} "THE TRIAL COURT ERRED BY IMPOSING THE MAXIMUM SENTENCES."
 {¶ 32} Castro argues that the court improperly imposed the maximum sentences for the crimes of which he was convicted.
 {¶ 33} In sentencing Castro to the maximum sentences the court stated:
 {¶ 34} "The court finds that the offenses involved here are the most serious — fall within the most serious category of offenses, for the offense of aggravated burglary, it's not only an aggravated burglary, but it's the use of a firearm brandished at the victim, forcing the victim to cooperate, constituting the aggravated burglary. The subsequent activity and simultaneous activity also included an aggravated burglary, which is a felony of the first degree, . . . the entry into the house in the commission of the aggravated burglary also included an offense of kidnaping, because the victim in this case was forced at gunpoint to enter the apartment. That is a felony of the second degree. . . . The court finds in this case that these are the most serious forms of the offenses. The court finds that physical harm was caused to the victim; that there was the causing of an actual threat of physical harm with a weapon during commission of this offense. The court finds that there was an attempt to cause, and there was an actual threat of physical harm to this person.
 {¶ 35} "The court finds that you were convicted June 6, 1994 for grand theft and aggravated burglary, and that you were sentenced to the penal institution for each of those offenses for two years consecutively.
 {¶ 36} "The court finds that the indictments in those cases included aggravated robbery specifications, two counts of kidnaping with violence specifications. It doesn't show whether you were incarcerated for those.
 {¶ 37} "The court also finds that there is a high likely probability that you will wind up doing this kind of thing again, based upon your character, your background, and the facts of this case. So we're going to give you some time."
 {¶ 38} In order to impose a maximum sentence, a trial court must make the findings found in R.C. 2929.14 (C), which states:
 {¶ 39} "Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 40} Additionally, when imposing the maximum sentence, the trial court must fulfill the requirements of R.C. 2929.19(B)(2)(e), which states:
 {¶ 41} "If the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term."
 {¶ 42} Here the trial court imposed maximum terms based on its conclusion that Castro committed the "worst form" of these offenses, and that he posed a great likelihood of committing future crimes. Thus, the court complied with the requirements R.C. 2929.14(e) in giving Castro maximum sentences. This assignment of error is therefore overruled.
 {¶ 43} Castro's fourth assignment of error states:
 {¶ 44} "THE TRIAL COURT ERRED BY ORDERING CASTRO TO SERVE CONSECUTIVE SENTENCES."
 {¶ 45} Castro next complains that the trial court failed to make the necessary findings and give the required reasons when it sentenced him to consecutive sentences. When the court imposes consecutive sentences, it must look to R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2) (c).
 {¶ 46} R.C. 2929.14(E)(4) sets forth the factors for imposition of consecutive or multiple prison terms and provides:
 {¶ 47} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public * * *."
 {¶ 48} Further, the trial court is required to find that the offender's behavior fits into one of the categories listed in R.C.2929.14(E)(4)(a), (b), or (c) that the offenses had been committed awaiting trial or sentence, or the harm caused is so great that no single term adequately reflects the seriousness of the offender's conduct or that consecutive sentences are necessary to protect the public from future crime. In addition, the trial court must give its reason for imposing consecutive sentences. See R.C. 2929.19(B)(2)(c).
 {¶ 49} The court at sentencing made these statements:
 {¶ 50} "All sentences are consecutive with each other. That's necessary to keep you off the streets so that you don't do this again. It's necessary to keep you off the streets so that the victim in this case is not further bothered by you. She has a right to live out her life with the security and belief that she's safe from you.
 {¶ 51} "Now I understand you have a family that cares about you. The trouble is, from what I've heard, that's a pretty tough family. Talk about hits out on people there and murdering people and retaliating against people.
 {¶ 52} "The victim in this case has appeared before this Judge just within the last week as part of this hearing, and has expressed great concern that she's going to be bothered by the Castro family, and that they will retaliate against her. Now, her fears in that regard certainly seem justified, particularly in light of the statements that I've heard today, Jose, and that's why you're getting all of this time, because we're scared to death that lady is going to be hurt by somebody."
 {¶ 53} The court then stated:
 {¶ 54} "I might think about that and find some reason to get around the statute here to give you a little less time, but I haven't heard anything about that so far as to what would — what it might be. So I think you ought to go back over there in that cell and talk to your lawyer to see if you can think of anything else that might persuade the court to be more lenient."
 {¶ 55} When sentencing Castro, the court found that he posed a danger to the victim and the community and would likely commit similar crimes. Thus, the court imposed its sentences to protect the public from future crimes.
 {¶ 56} The court also found that consecutive sentences are not disproportionate to the seriousness of the conduct and to the danger he posed to the victim and the public when it stated that it tried to find a reason to give him less time but had not heard anything to persuade leniency. In this case, that judicial statement constitutes the proportionality finding.
 {¶ 57} A sentencing court is not required to use the exact language of the statute, as long as it is clear from the record that the court made the required findings. See State v. Williams, Cuyahoga App. 79273, 2002-Ohio-503, citing State v. Hollander (2001),144 Ohio App.3d 565.
 {¶ 58} In this case the trial court gave reasons for imposing consecutive sentences and found it necessary to protect the public from future crimes which it believed Castro would commit; and it determined it could not grant leniency to Castro, thereby making its sentence not disproportionate to the seriousness of his conduct and the danger he posed to the victim and the public. Accordingly, the court properly imposed consecutive sentences. This assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., CONCURS, KENNETH A. ROCCO. P.J., CONCURS IN PARTAND DISSENTS IN PART (WITH SEPARATE CONCURRING AND DISSENTING OPINION).